NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12411


COMMONWEALTH  vs.  MAKSIM LUTSKOV.



Hampden.     March 5, 2018. - September 14, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Armed Home Invasion.  Youthful Offender Act.  Constitutional
    Law, Sentence.  Due Process of Law, Sentence.  Practice,
    Criminal, Sentence, Instructions to jury.




    Indictments found and returned in the Superior Court
Department on December 27, 2000.

    After transfer to the Hampden County Division of the
Juvenile Court Department, the cases were tried before Patricia
M. Dunbar, J., and a motion for postconviction relief, filed on
November 28, 2016, was heard by Carol A. Shaw, J.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Merritt Schnipper for the defendant.
    David L. Sheppard-Brick, Assistant District Attorney, for
the Commonwealth.
    Barbara Kaban, for Youth Advocacy Division of the Committee
for Public Counsel Services & others, amici curiae, submitted a
brief.
    Meredith Shih, for Boston Bar Association, amicus curiae,
submitted a brief.

LOWY, J.  The defendant, Maksim Lustkov, was sixteen years old in October, 1999, when he committed an armed home invasion during which he shot one occupant three times in front of the occupant's teenage daughter.  A Juvenile Court jury adjudicated the defendant a youthful offender on indictments charging armed home invasion and various related offenses, and he was sentenced to a mandatory minimum State prison term of from twenty years to twenty years and one day.[1]

In 2016, after our decision in Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655 (2013), S.C., 471 Mass. 12 (2015), the defendant filed a motion for relief from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), arguing that all mandatory minimum sentences violate art. 26 of the Massachusetts Declaration of Rights when applied to juveniles.  He also argued that the evidence was insufficient to sustain his adjudication as a youthful offender, and that the judge incorrectly instructed the jury on the issue.  A Juvenile Court judge denied the motion, and we granted the defendant's application for direct appellate review.

---

[1] The defendant was adjudicated a youthful offender on indictments charging armed home invasion; assault and battery by means of a dangerous weapon (two counts); armed assault with intent to rob; assault by means of a dangerous weapon; and assault and battery.

On appeal, the defendant primarily argues that in light of this court's decision in Commonwealth v. Perez, 477 Mass. 677 (2017) (Perez I), his mandatory twenty-year minimum sentence is presumptively disproportionate because it imposes a longer period of incarceration prior to eligibility for parole than that applicable to a juvenile convicted of murder without a finding of extraordinary circumstances based on consideration of the factors articulated in Miller v. Alabama, 567 U.S. 460, 477-478 (2012) (Miller).  He further argues that our reasoning in Perez I applies with equal force to invalidate all mandatory minimum sentences when applied to juveniles.

For the reasons that follow, we conclude that the evidence was sufficient to sustain the defendant's adjudication as a youthful offender and, although we agree that the judge failed to instruct the jury that they were required to find the defendant's qualifying age in order to adjudicate him a youthful offender, this error does not require reversal.  As to the constitutionality of the defendant's sentence, we agree that the defendant's sentence violates the proportionality requirement inherent in art. 26.  Our decision in Perez I, 477 Mass. at 686, requires sentencing judges to follow an individualized process that allows for the consideration of mitigating circumstances related to the juvenile's age and youthful characteristics before imposing a sentence with a longer period of incarceration

prior to eligibility for parole than that applicable to a juvenile convicted of murder. The defendant was sentenced to a mandatory minimum term exceeding that applicable to a juvenile convicted of murder without a Miller hearing in violation of the requirements announced in Perez I, and refined in Commonwealth v. Perez, 480 Mass.    (2018) (Perez II), also decided today. Accordingly, we remand the case to the Juvenile Court for resentencing.[2]

Background. 1. Facts. We summarize the facts relevant to the present appeal in the light most favorable to the Commonwealth, reserving certain details for later discussion. At approximately 8:30 P.M. on October 31, 1999, Fulia Aiken heard a knock at the door of the house where she lived with her father, Amhet Aiken.[3] Fulia opened the door and the defendant, who was armed with a firearm and accompanied by two accomplices, forced his way inside. All three individuals were wearing masks. Ahmet, in response to his daughter's screams, came downstairs and a struggle ensued. During the struggle, Ahmet knocked off the defendant's mask and the defendant shot Ahmet

_____

[2] We acknowledge the amicus briefs submitted by the youth advocacy division of the Committee for Public Counsel Services, Children's Law Center of Massachusetts, Citizens for Juvenile Justice, and the Massachusetts Association of Criminal Defense Lawyers; and by the Boston Bar Association.

[3] Because Fulia Aiken and her father, Amhet Aiken, share a last name, we refer to them by their first names.

three times.  The defendant and his accomplices fled, leaving behind the mask that Ahmet had knocked off the defendant's face.

2.  <u>Trial</u>.  During its direct case at trial, the Commonwealth offered evidence of the defendant's age through two witnesses.  A Springfield police detective testified that a fingerprint lifted from the mask left at the Aikens' house was identical to the defendant's left thumbprint, and a fingerprint card bearing the defendant's name and date of birth ("02/06/83") was admitted in evidence.  Fulia also testified that the intruders appeared to be "kids . . . [a]bout sixteen, seventeen, eighteen [at] the most."  At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty on all charges, which the judge denied.  After the Commonwealth rested, the defendant offered medical records and testimony from his physician establishing that he was sixteen years old on the date of the offenses.  The defendant was adjudicated a youthful offender pursuant to G. L. c. 119, § 54, on all charges.

3.  <u>Sentencing</u>.  At the sentencing hearing, the Commonwealth recommended a sentence of from thirty to forty years in State prison on the home invasion charge, and a combination of concurrent and from-and-after sentences on the remaining counts.  Pursuant to G. L. c. 119, § 58, as amended through St. 1996, c. 200, § 5, the defendant requested a sentence of commitment to the Department of Youth Services (DYS)

until age twenty-one, and thereafter a commitment to State prison for a term of from five to seven years.

The judge did not follow the defendant's sentence recommendation. She explained that armed home invasion carried a mandatory minimum sentence and, although a split sentence with commitment to DYS was an available option, such a disposition was not appropriate considering the defendant's age at the time of sentencing (almost nineteen years old), public safety concerns, and the violent nature of the offenses. The judge sentenced the defendant to from twenty years to twenty years and one day in State prison on the armed home invasion charge.

4. Posttrial proceedings. In August, 2013, after serving one-half of his committed sentence, the defendant filed, pro se, a motion for relief from unlawful restraint and for a new trial pursuant to Mass. R. Crim. P. 30 (a) and (b), as appearing in 435 Mass. 1501 (2001), claiming ineffective assistance of counsel. The defendant primarily argued that he was entitled to resentencing in light of the United States Supreme Court's decision in Miller. The trial judge denied the motion, and the defendant did not appeal.

In November, 2016, the defendant, represented by counsel, filed his second motion for relief from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a). He argued that art. 26 prohibited the automatic application of any mandatory minimum

sentence for a juvenile defendant.  He also argued that the Commonwealth presented insufficient evidence that he was between fourteen and seventeen years of age at the time of the crimes, and that the trial judge failed to instruct the jury that they were required to find the defendant's age within this range in order to adjudicate him a youthful offender.  A different judge of the Juvenile Court (the trial judge having retired) denied the motion, concluding that the defendant's failure to raise either argument at trial, on direct appeal, or in his first rule 30 motion constituted waiver.  After finding the defendant's arguments waived, the judge nonetheless went on to consider whether any of the claimed errors would give rise to a miscarriage of justice.  The judge agreed that the jury heard insufficient evidence of the defendant's age at the time of the offenses and that the trial judge erred in failing to instruct the jury that in order to adjudicate the defendant as a youthful offender, they must find that the Commonwealth had proved that he was between fourteen and seventeen years of age at the time of the offenses.  Nevertheless, the motion judge found no risk of a miscarriage of justice because, although she found that the Commonwealth failed to submit sufficient evidence of the defendant's age during its case-in-chief, the defendant introduced evidence establishing that he was between fourteen and seventeen years of age at the time of the crimes.  The judge

further concluded that the sentencing judge's imposition of a twenty-year mandatory minimum sentence was not automatic:  the record demonstrated that she had considered the evidence presented at trial and the probation department's presentence report before imposing the mandatory minimum sentence.

Discussion.  We review the denial of a motion for relief from unlawful restraint brought under Mass. R. Crim. P. 30 (a) for an abuse of discretion or error of law.  See Perez I, 477 Mass. at 681-682; Commonwealth v. Wright, 469 Mass. 447, 461 (2014).

1.  Sufficiency of the evidence.  The defendant argues that the evidence at trial was insufficient to sustain his adjudication as a youthful offender, and therefore that his motion for a required finding of not guilty should have been allowed.  Specifically, the defendant challenges the sufficiency of the evidence that he was between the ages of fourteen and seventeen at the time of the offenses.  We consider this claim to determine whether, viewing the evidence in the light most favorable to the Commonwealth, any rational jury could have found each of the elements of the offense beyond a reasonable doubt.  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

In order for a juvenile to be adjudicated a youthful offender, the Commonwealth must present sufficient evidence that (1) the juvenile was between fourteen and seventeen years of age

at the time of the offense; (2) the offense, if committed by an adult, is punishable by imprisonment in State prison; and (3) either the juvenile has previously been committed to DYS, the alleged offense involves certain enumerated firearms violations, or the alleged offense involves the infliction or threat of serious bodily harm.  G. L. c. 119, § 54, as amended through St. 1996, c. 200, § 2.[4]

Here, the evidence introduced at trial concerning the defendant's age was sufficient to support his adjudication as a youthful offender.  During its case-in-chief, the Commonwealth offered a fingerprint card bearing the defendant's name and date of birth ("02/06/83"), and Fulia testified that the intruders were "kids . . . [a]bout sixteen, seventeen, eighteen [at] the most."  Accordingly, there was no error in the denial of the defendant's motion for a required finding.[5]

---

[4] The version of the youthful offender statute in effect at the time of the defendant's offenses defined a "youthful offender" as "a person who is subject to an adult or juvenile sentence for having committed, while between the ages of fourteen and seventeen, an offense against a law of the commonwealth."  G. L. c. 119, § 52, as amended through St. 1996, c. 200, § 1.  In 2013, the Legislature amended the definition of a "youthful offender" to a person "between the ages of fourteen and [eighteen] ."  G. L. c. 119, § 54, as amended through St. 2013, 84, § 8.

[5] We agree with the motion judge's conclusion that Fulia's testimony regarding the defendant's physical appearance, by itself, would have been insufficient to support the defendant's adjudication as a youthful offender.  See Commonwealth v. Pittman, 25 Mass. App. Ct. 25, 27 (1987) (physical appearance

2. Jury instructions. The defendant next contends that the trial judge's jury instructions were erroneous because the judge did not instruct the jury that if the defendant were to be adjudicated a youthful offender, they must find that he was between fourteen and seventeen years of age at the time of the offenses.

The judge instructed the jury only that the Commonwealth was proceeding against the defendant "as a youthful offender." The instruction should have informed the jury that the Commonwealth was required to prove beyond a reasonable doubt the requirements set forth in G. L. c. 119, § 54, including the defendant's qualifying age at the time of the offenses. See G. L. c. 119, § 54; Commonwealth v. Quincy Q., 434 Mass. 859, 866 (2001). The defendant did not object to the jury instruction as given, and did not request any additional instruction. Thus, we review to determine whether this error created a substantial risk of a miscarriage of justice.

---

may be considered as factor in discerning age, but judging age on physical appearance alone is not sufficient). However, Fulia's testimony, considered together with the fingerprint chart bearing the defendant's age, was sufficient to satisfy the Commonwealth's burden of proof on this element. We note that the motion judge did not have the benefit of the fingerprint chart bearing the defendant's age (exhibit no. 15) in ruling on the defendant's motion. After the defendant's trial, that exhibit was transferred to the Superior Court for the trial of codefendant Artem Vaskanyan. When the fingerprint chart was admitted at Vaskanyan's trial, the exhibit sticker identifying the chart as Juvenile Court exhibit no. 15 was covered with a Superior Court exhibit sticker.

See Commonwealth v. Alphas, 430 Mass. 8, 13 (1999).  See also Commonwealth v. Redmond, 53 Mass. App. Ct. 1, 6-7 (2001) (where defendant fails to object to jury instruction that omits element of crime, appellate court considers whether omission created substantial risk of miscarriage of justice).

We conclude that the judge's omission in her instruction to the jury does not warrant reversal.  At the close of the case, the evidence showing that the defendant was between fourteen and seventeen years of age at the time of the offenses was so overwhelming that the defendant's age was not a contested issue at trial.  See Quincy Q., 434 Mass. at 866.  Indeed, the defendant himself presented documentary evidence that, at the time of the offenses, he was sixteen years old.  Because there is no likelihood that the omitted instruction materially influenced the jury's verdicts, there was no substantial risk of a miscarriage of justice.  See Commonwealth v. Gabbidon, 398 Mass. 1, 5 (1986) ("no harm accrues to a defendant if an error does not relate to an issue actively contested at trial").

3.  Constitutionality of the sentence.  The defendant was sentenced prior to the issuance of the United States Supreme Court's decision in Miller, 567 U.S. at 479, and our decisions in Diatchenko, 466 Mass. at 667, and Perez I, 477 Mass. at 687.

In Miller, 567 U.S. at 479, the Supreme Court held that the Eighth Amendment to the United States Constitution prohibits

sentencing juveniles to mandatory sentences of life imprisonment without the possibility of parole.  The Court explained that the sentencing judge must "have the ability to consider the mitigating qualities of youth" rather than imposing a mandatory sentence of life without parole (quotations and citation omitted).  Id. at 476.  Three years later, in Diatchenko, 466 Mass. at 671, we held that art. 26, unlike its Federal counterpart, prohibits not only mandatory life sentences, but also discretionary juvenile sentences of life without the possibility of parole.  After Diatchenko, supra, a juvenile sentenced to life without the possibility of parole would be eligible for parole after fifteen years.  See Commonwealth v. Brown, 466 Mass. 676, 688-689 (2013), S.C., 474 Mass. 576 (2016).

In Perez I, 477 Mass. at 682-687, we considered whether art. 26 prohibits an aggregate term-of-years sentence for a juvenile convicted of nonhomicide offenses with a longer period of incarceration prior to eligibility for parole than that applicable to a juvenile convicted of murder.  Applying the tripartite test established in Cepulonis v. Commonwealth, 384 Mass. 495, 497-499 (1981), we held that

> "a juvenile defendant's aggregate sentence for
> nonmurder offenses with parole eligibility exceeding
> that applicable to a juvenile defendant convicted of
> murder is presumptively disproportionate.  That
> presumption is conclusive, absent a hearing to

> consider whether extraordinary circumstances warrant a sentence treating the juvenile defendant more harshly for parole purposes than a juvenile convicted of murder."

Perez I, supra at 686.  In determining whether extraordinary circumstances justify a longer period of incarceration prior to eligibility for parole, the judge must consider "(1) the particular attributes of the juvenile, including immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds [the juvenile] from which he cannot usually extricate himself; and (3) the circumstances of the . . . offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him" (quotations omitted).  Id., quoting Miller, 567 U.S. at 477.  Not every factor will necessarily be relevant in every case.  A sentencing court exercising its discretion may afford whatever weight it reasonably determines appropriate to each Miller factor in light of the circumstances of the case.  See Perez I, supra.

In Perez II, also decided today, we emphasized that under the individualized sentencing process outlined in Perez I, 477 Mass. at 686:

> "the criminal conduct alone is not sufficient to justify a greater parole eligibility period than is available for murder.  The juvenile's personal and family history must also be considered independently; this consideration of the individual's personal and family history is also not the ordinary mitigation

> analysis associated with sentencing. . . .  [B]oth the
> crime and the juvenile's circumstances must be
> extraordinary to justify a longer parole eligibility
> period."

Perez II, 480 Mass. at    .  Although the Commonwealth need not show that "the defendant exhibited 'irretrievable depravity' or 'irreparable corruption,'" id. at    , the Commonwealth must prove "that the juvenile's personal characteristics make it necessary to delay parole eligibility for a time exceeding that available to juveniles convicted of murder."  Id. at    .  In other words, "the Commonwealth must prove that there is no reasonable possibility of the juvenile's being rehabilitated within the time after which a juvenile convicted of murder becomes eligible for parole."  Id.

The defendant in this case was sentenced to the mandatory twenty-year minimum sentence under the armed home invasion statute, G. L. c. 265, § 18C, without a Miller hearing.  Because this is five years longer than the sentence applicable to a juvenile convicted of murder in 2001, the presumption announced in Perez I applies.  See Perez I , 477 Mass. at 685 ("[t]here is a line between homicide and other serious violent offenses against the individual. . . .  In the absence of extraordinary circumstances, . . . this line must not be crossed to treat a juvenile convicted of a nonmurder offense, or multiple nonmurder

offenses, more harshly than a juvenile convicted of murder" [quotations and citation omitted]).[6]

Where the mandatory minimum sentence imposed by statute exceeds the parole eligibility for murder, by definition, the sentencing judge is not afforded an opportunity to consider the Miller factors as they relate to imposing a sentence below the mandatory minimum.  See Perez I, 477 Mass. at 686 (requiring individualized consideration of characteristics attendant to youth before imposing integrated sentence with resulting parole eligibility date in excess of that applicable for murder).  Because the defendant's sentence was imposed without "a finding that the circumstances warrant treating the [defendant] more harshly for parole purposes than a juvenile convicted of murder," it is presumptively disproportionate under art. 26.  Id. at 679.[7]  We therefore vacate the denial of the

---

[6] Under the juvenile disproportionality test announced in Perez I, 477 Mass. at 683-685, we examine first the "nature of the offense and the offender," with regard to the degree of danger present to society (citation omitted).  Id. at 684. Second, a comparison is made of the challenged sentence with those imposed for juveniles convicted of more serious crimes. Id.  Third, the challenged sentence is compared with those imposed for the same offense in other jurisdictions.  Id.  The unique characteristics of a juvenile defendant "weigh more heavily in the proportionality calculus" under art. 26.  Id. at 683, citing Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 671 (2013), S.C., 471 Mass. 12 (2015).

[7] The Commonwealth contends that the defendant's sentence is not presumptively disproportionate under Perez I, 477 Mass. at 684, because, given the good conduct credits available at the

defendant's rule 30 motion.  At resentencing, the judge may impose a committed sentence with parole eligibility in excess of fifteen years only after finding extraordinary circumstances under the factors identified in Perez I, and clarified in Perez II.[8]  In addition, because the defendant was sentenced in 2001, relevant evidence of the defendant's "particular attributes" of youth include evidence of postconviction rehabilitation, including any good behavior in prison since he was sentenced as a juvenile.  This is consistent with "societal goals of punishment, deterrence, protection of the public, and

---

time of the defendant's offenses, he would be eligible for parole after serving fourteen and one-half years.  See G. L. c. 127, § 129D; G. L. c. 127, § 133; 120 Code Mass. Regs. § 200.02(2) (1997).  See also Commonwealth v. Brown, 431 Mass. 772, 774 & n.6 (2000).  We disagree.  Although the defendant's minimum twenty-year sentence under G. L. c. 265, § 18C, may be reduced for "good conduct credits," Perez I, supra, focuses on the parole eligibility date at the time of sentencing, not future computation of "good time."  Moreover, good conduct programs are controlled by the Department of Correction, not the sentencing judge.

[8] A Juvenile Court judge has three dispositional choices after a defendant is adjudicated a youthful offender:  (1) a sentence provided by law (i.e., an adult punishment for the offense); (2) a combination sentence consisting of a commitment to the Department of Youth Services (DYS) until the juvenile reaches the age of twenty-one followed by a suspended adult sentence; or (3) commitment to DYS until the age of twenty-one. G. L. c. 119, § 58, third par.  See Commonwealth v. Samuel S., 476 Mass. 497, 503 (2017).  We need not reach the issue, not argued or briefed by the parties, whether the so-called Truth in Sentencing Act, St. 1993, c. 432, § 11, which, inter alia, amended G. L. c. 127, § 133, to prohibit imposition of a suspended State prison sentence, bars the sentencing judge from imposing a combination sentence pursuant to G. L. c. 119, § 58, third par.

rehabilitation" (quotations and citation omitted), Commonwealth v. Costa, 472 Mass. 139, 147 (2015), as well as the heightened capacity of juveniles for rehabilitation, Miller, 567 U.S. at 477-478.  See Pepper v. United States, 562 U.S. 476, 490-491 (2011) (court may impose lesser sentence based on postconviction rehabilitation efforts).  If the sentencing judge imposes a committed sentence, she may not impose a sentence below the minimum twenty-year sentence required by statute for armed home invasion.  Nonetheless, the defendant would be eligible for parole after fifteen years absent a finding of extraordinary circumstances.

Conclusion.  For the foregoing reasons, the order denying the defendant's rule 30 motion is vacated, and the matter is remanded to the Juvenile Court for resentencing consistent with this opinion.

So ordered.